No. 24,209.

THE PRAIRIE OIL & GAS COMPANY, THE PRAIRIE PIPE LINE COMPANY, THE MONARCH CEMENT COMPANY, *Appellees,* v. THE BOARD OF EDUCATION OF THE CITY OF HUMBOLDT, et al., (OAKLAND SCHOOL DISTRICT NO. 17, OF ALLEN COUNTY, *Appellee*), *Appellants.*

SYLLABUS BY THE COURT.

SCHOOL DISTRICT—*Validity of Annexation of Adjoining Territory—Can Be Raised Only by the State.* The existence of a school district or the validity of the annexation of adjoining territory to the district made by the board of education in pursuance of a valid law may not be tested in an injunction proceeding brought by a private party under civil code section 265, to enjoin the imposition of a tax on the ground that the annexation to and reorganization of the district was invalid.

Appeal from Allen district court; SHELBY C. BROWN, judge *pro tem.* Opinion filed February 10, 1923. Reversed.

*L. T. Cannon,* of Humboldt, *G. H. Lamb, W. E. Hogueland,* both of Yates Center and *John W. Brown,* of Iola, for the appellants.

*T. J. Flannelly,* of Independence, *A. H. Campbell, Travis Morse, Baxter D. McClain,* all of Iola, and *Paul B. Mason,* of Independence, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was jointly brought by the Prairie Oil and Gas Company, The Prairie Pipe Line Company and the Monarch Cement Company, against the board of education of the city of Humboldt and the county clerk and treasurer of Allen county, to enjoin them from levying upon or subjecting the property of the plaintiffs to a school tax imposed by the board of education, and the ground for the action is that the property had been illegally annexed to the city school district. Afterwards Oakland school district number seventeen, from which the territory was detached, intervened, and upon permission of the trial court was made a defendant. The Oakland district as well as the plaintiffs alleged that the action of the board of education in its attempt to transfer territory from that district to the city district was in violation of the statutes, fraudulent and without effect. The trial court found that the attempted annexation was illegal and void and all steps towards the imposition of the tax on the territory in question were enjoined. The defendants other than the Oakland school district appeal.

It appears that in 1914 effort was made to annex the territory to the city district, and after a trial it was there held that the annexation was done collusively and fraudulently, and a permanent injunction was granted. That judgment was affirmed. (*School district v. Board of Education,* 100 Kan. 59, 163 Pac. 800.) In 1919 proceedings for annexing the territory were renewed and the order in question was made. The application for the order was signed by Sylvan B. Miller and his wife, who were the only electors in the territory sought to be annexed, and their two children are the only children of school age in this territory. The integral territory which adjoined the city district was not all included in the proposed annexation, but there was cut out of it an irregular shaped tract of two acres on which there were electors opposed to the annexation. This tract was surrounded on the northwest and south sides by the property of the cement company which was included in the territory proposed to be annexed. On a part of the property of the cement company, there were between fifteen and twenty children of school age, but as the parents of these children were opposed to the annexation that part was also cut out of the integral territory, and thus, by excluding all on this adjoining integral territory, except Miller and his wife, the required statutory majority was obtained. It appears that the two children of the Millers have never attended school in the Oakland district in which they lived but have been attending the city schools of Humboldt, staying with their grandparents, and have been educated there without payment of tuition. It appeared and the court found that there were no children living in the territory proposed to be annexed who had ever attended school in the Oakland district and that the Miller children had always attended school in the city and were not intending to attend school in district number seventeen. In his evidence Miller admitted that the Beatty tract was cut out because the resident owners were opposed to annexation, and further that if they were taken in the petitioners would not have had the necessary majority. He also admitted that they did not take in the part of the cement company's property on which people resided because they were employees of the cement company who would not sign the application. It appears too that the petition which was presented by Miller was handed to him, prepared for signatures, by the president of the board of education, and was signed by himself and wife on the same day the

board made its order annexing the territory to the city of Humboldt for school purposes.

The trial court found upon the testimony that a majority of the electors of the adjacent and integral territory did not sign the application for the annexation for the reason that the electors on a part of the territory were purposely prevented from exercising their rights under the provision of the statute that the board of education was aware of the opposition of those living on the cut-out territory, were opposed to the order, and denied these electors a right to have a voice in the matter, and that having notice of the wrong and participating therein, they violated the statute under which the order was made.

The first and controlling question presented in the appeal is as to the capacity of the plaintiffs to maintain the action. The annexation has been made and the reorganization of the district completed under a valid law. May private parties attack the validity of the district as formed, where its validity is the main issue and the turning point in the case? On the part of the plaintiffs it is contended that the organization is illegal and that any tax which the defendant might impose upon it was necessarily illegal, and hence taxpayers were entitled to maintain injunction under the provisions of section 265 of the civil code. This section gives any taxpayer a remedy by injunction against public officers who are doing anything that will result in an illegal charge or assessment. That provision, however, was not intended to authorize private parties to challenge the existence or validity of the municipalities of the state. Surely it was not the legislative purpose that the existence of a county, a city or other municipality might be assailed by private parties who sought to enjoin a tax. These municipalities would stand in a precarious position if every complaining taxpayer might attack their existence. From the beginning it has been held that questions of this kind can only be considered in a direct proceeding brought at the instance of the state, by the attorney-general or county attorney. In an action by a private party to enjoin a tax levied by a school district on the ground that the district did not have a legal existence, it was held that the action could not be maintained. The court said:

"The legality of the organization cannot be questioned in a collateral proceeding, nor at the suit of a private party. The organization cannot be attacked, nor any action taken affecting the existence of the corporation, except in a direct proceeding prosecuted at the instance of the state by the proper

public officer. . . . What we do decide is, that there exists a valid law under which the organization can be made; that a corporation has been created thereunder, and is in existence; and that if there were any irregularities or illegal action in its organization, either by reason of the boundaries established or otherwise, it must be determined by a quo warranto proceeding brought by the state." (*A. T. & S. F. Rld. Co., v. Wilson,* 33 Kan. 223, 228, 6 Pac. 281.)

In the Wilson case there was a quotation from another authority saying that:

"It would be dangerous and wrong to permit the existence of municipalities to depend on the result of private litigation. Irregularities are common and unavoidable in the organization of such bodies, and both law and policy require that they shall not be disturbed except by some direct process authorized by law, and then only for very grave reasons." (p. 228.)

Other cases of similar import are: *Voss v. School District,* 18 Kan. 467; *Topeka v. Dwyer,* 70 Kan. 244, 78 Pac. 417; *Railway Co. v. Lyon County,* 72 Kan. 13, 82 Pac. 519, 84 Pac. 1031; *Leavitt v. Wilson,* 72 Kan. 160, 83 Pac. 397; *Horner v. City of Atchison,* 93 Kan. 557, 144 Pac. 1010; *Miely v. Metzger,* 97 Kan. 804, 156 Pac. 753; *Bealmear v. Hildebrand,* 107 Kan. 419, 191 Pac. 263.

It is argued that the amendment of the code provision found in Laws of 1905, chapter 334, which is section 265 of the civil code, warrants a different view than was expressed in the earlier cases. It will be observed that a number of the cases cited above, where the right of taxpayers to bring an action of injunction was directly drawn in question have been determined since the amendment was made. In *Miely v. Metzger,* supra, decided in 1916, a taxpayer brought an action under code section 265 to enjoin a school district from issuing bonds and buying a site for a school building, and it was said:

"The code provision cited did not authorize the plaintiff to question the legality of the corporate organization. The state alone can question the existence of the district as a corporate entity and its right to exercise corporate power." (p. 805.)

In *Bealmear v. Hildebrand,* supra, an injunction was sought by a taxpayer who questioned the organization and boundaries of a rural high-school district, and he asked that an election of officers be enjoined. It was held that:

"Private persons have no standing to question the legality of the organization of a rural high-school district, by an action to enjoin election of rural high-school district officers." (Syl.)

The late case of *Schur v. High School District*, ante, p. 421, 210 Pac. 1105, involved a question as to the validity of the organization of the district and another as to the validity of the proposed issue of bonds. On the first proposition it was held:

"The state has provided its own officials, an attorney-general and a county attorney, to challenge the validity of corporate or quasi-corporate organizations in this state like cities, counties, townships, and school districts; and ordinarily it is no justiciable concern of private individuals that these public subdivisions and organizations of the state may have some infirmity in their organization. So, too, the exercise of official powers and the ousting of official usurpers are matters of which the state alone may complain at the suit of its authorized legal representatives. And the fact that the state's proper officers decline to act does not give authority to private individuals to institute litigation on such matters of public concern." (p. 422.)

On the second branch of that litigation it was held that private parties might challenge the validity of the proposed bonds and obtain an injunction against the issue of them upon the ground that the election at which the bonds were voted was based upon an insufficient and illegal notice.

Plaintiffs place much reliance upon the ruling in *Patrick v. Haskell County*, 105 Kan. 153, 181 Pac. 611, but there the right of the plaintiff to maintain the action was not directly challenged. The principal question determined as to the form of the action was that where a right of action under the statute is given to the taxpayer, he is not required to plead or show that he has no other adequate remedy at law or that he will suffer irreparable injury if the remedy of injunction is not available to him. With boundaries extended, the district was a corporate entity. The law provides that territory may be lawfully annexed to a school district. The officers having authority to extend the boundaries and take in adjoining territory have acted and made the order of annexation. Whether the steps taken were regular and legal and the district reorganized into a valid municipality may be challenged by the state in an appropriate proceeding, but the corporate entity cannot be dissolved or destroyed at the suit of a private party, nor can the extent of its boundaries be determined in such an action. A tax-payer may avail himself of the injunction remedy to question the right to levy or enforce a tax because it is unequal or is excessive or that the levy was for an unauthorized purpose or because of irregularities in making the levy or assessment, but he cannot use it to test the existence of a municipality either *de jure* or *de facto*, which is functioning as a

Skinner v. Oil Co.

corporate entity under a valid law. It is said that the right to em-
ploy the remedy was recognized in the earlier case of *School District
v. Board of Education,* supra, but there the capacity of the plaintiff
to bring the suit ,was not pressed upon the attention of the court,
and at any rate the right of the plaintiff to sue was not considered
or determined. It was directly raised in the present case, and the
demurrer of the defendant should have been sustained.

The judgment is reversed, and the cause remanded with direction
to dismiss the action.