No. 31,248

W. H. Wagner, *Appellee*, v. School District No. 58, in Graham County, *Appellant.*

(26 P. 2d 588.)

Opinion filed November 11, 1933.

*W. L. Sayers* and *J. S. Parker,* both of Hill City, for the appellant.

*W. H. Wagner,* of Wakeeney, *pro se.*

The opinion of the court was delivered by

Thiele, J.: This was an action to recover for services as an attorney, rendered to a school district. The defendant's general demurrer to the petition was overruled, and it appeals.

The allegations of the petition may be summarized as follows: Plaintiff is a practicing attorney. On November 29, 1930, plaintiff was employed by the then director of the defendant school district to look after the interests of the district, as its attorney, in an action then being taken and to come up before the county superintendent, the substance of the agreement, which was oral, being—

"That plaintiff, as attorney for said school district, was to look after its interests as plaintiff deemed right and proper in opposing the action then being taken and to be heard before the county superintendent of Graham county, Kansas, for the changing of the boundaries of said school district No.

58, Graham county, Kansas, and to take and handle appeals from action of said county superintendent or bring action or actions in the courts of the state of Kansas, if it became necessary in plaintiff's opinion to the interests of said school district, to the end that the territory of said school district should be kept intact."

The compensation for handling the matter before the county superintendent was fixed and provided for if appeal or action in court became necessary. The employment was afterwards approved by the members of the district board at a regularly called meeting, the minutes of the board meeting reciting:

"Board Members of Dist. 58,

"By the director of board, meeting is called and held for school district No. 58, at the home of the clerk, D. A. Dreiling, on the 29th day of Nov. 1930, present Joe Rohleder, director, Aug. Spies, Tr., and D. A. Dreiling, clerk, after discussion it was moved and carried by majority of said board that they employ W. H. Wagner of Wakeeney, Kansas, attorney-at-law, to look after the interests of said school district in the action now being taken and to come up before the county superintendent of Graham county on December 17, to change the boundaries of said school district by taking away certain of its lands and attaching can to oppose said change and to take appeal from the action of said superintendent if it becomes necessary.

"Dre., Joe Rohleder
"Tr., Aug. Spies
"Clerk, D. A. Dreiling."

It was further alleged that, pursuant to his agreement, plaintiff appeared before the county superintendent, who made a ruling adverse to the school district; that plaintiff perfected an appeal and also prepared and filed an action in the district court to restrain the superintendent from carrying out his order to detach lands from the defendant district and attaching same to another district, "all of which in the end and at the conclusion of said proceedings and litigation, did preserve the interests of said defendant school district, defeated the unjust ruling made by said superintendent and kept the boundaries and territory of said defendant school district intact."

The remaining allegations have to do with the amount and value of the services under the contract; that a verified statement and claim was filed therefor with the district board and was rejected. Attached to the petition is a copy of the claim. Later a "supplement" was filed setting out the services rendered and the expenses incurred.

The abstract does not contain a specification of errors, as required by rule five of this court, but appellant's brief presents two questions: (1) Is the school district board authorized to employ an attorney to resist a petition to change the boundaries of the district? and (2) Does the school district board have authority to employ an attorney to institute or appear in an action in which neither the school board nor the school district is a party, in a case brought by individual taxpayers to enjoin the county superintendent from enforcing an order changing the boundaries of the district?

As to the first question, appellant directs our attention to R. S. 72-302, which provides that every school district shall be a body corporate and shall possess the usual powers of a corporation for public purposes, by name and style set forth and by that name may sue and be sued; to R. S. 72-406, reciting the powers of the district meeting, which include: "*Seventh,* to give such direction and make such provision as may be deemed necessary in relation to prosecution or defense of any suit or proceedings in which the district may be a party"; and to R. S. 72-1004, which provides that the director shall appear for and in behalf of the district in all suits in which it is a party, unless other directions shall be given at a district meeting. Appellant contends that neither the director nor the board itself is authorized to .employ an attorney in any matter or proceeding to which the district is not a party, and that its demurrer should have been sustained because the petition does not show that the services for which plaintiff was employed were such as the board had a right to incur for the district, and in support thereof cites 56 C. J. 782 and some of the notes thereto. In the notes, *School District No. 38 v. Rural High School Dist.,* 116 Kan. 40, 225 Pac. 732, is cited. An examination of the decision shows that a common-school district was attacking the validity of a rural high-school district whose boundaries included those of the common-school district, and it was held that while a school district may sue and be sued, it is not authorized to bring an action questioning the existence, boundaries or validity of another school district, and that such action can only be brought in the name of the state, and many other decisions holding to the same effect might be cited. But that does not answer the question here. The school district was not attempting to question the existence or boundaries of any other district. It was attempting to preserve its own territorial integrity against

what it conceived to be an unlawful change proposed to be made by the county superintendent. The petition alleges it was successful in so doing. Did it have the right so to do? We have no wish or desire to alter the general rule that the existence or validity of a municipal corporation can only be questioned or attacked in an action brought by the state and prosecuted by the attorney-general or county attorney. (See *School District No. 38 v. Rural High School District,* 116 Kan. 40, 42, 225 Pac. 732, and cases cited therein.) It appears from the petition that such was not the purpose for which plaintiff was hired. There was neither a direct nor collateral attack on the existence or validity of any district.

In *School District v. Board of Education,* 100 Kan. 59, 163 Pac. 800, a situation existed similar to that which caused the employment of plaintiff herein by the defendant district. The board of education sought to annex territory of the plaintiff district, which brought an injunction suit to prevent the annexation proceedings from being carried out. There is no showing that the right of the district to bring the suit in its own name was raised, but it is significant that it received relief in the lower court and, on appeal, in this court. In the case before us it appears that the district board desired to determine the regularity of proceedings by which it would be, not had been, divested of a portion of its territorial limits, and the retaining of plaintiff, as its attorney, was for that purpose.

A different situation was presented in *School District v. Board of Education,* 102 Kan. 784, 171 Pac. 1154, where, long after the annexation had been made, the school district sought to test its sufficiency and validity, and it was held that the state alone could challenge the proceedings in an independent action.

It is argued, inferentially, that the director of the school board should have appeared "for and in behalf of the district" (R. S. 72-1004) and that neither he nor the district board was authorized to hire an attorney. If that contention be fully true, appellant's counsel may be in a precarious situation themselves.

In the absence of statutory restrictions, a school district has power, as a necessary incident of its duties and authority, to employ legal counsel. (See 56 C. J. 362, note 39 (c).)

"The capacity to sue or be sued carries with it all powers that are ordinarily incident to the prosecution or defense of a suit at law or in equity, such as those of employing counsel. . . ." (56 C. J. 779.)

"The question has frequently arisen as to the propriety of the expenditure

of school funds in counsel fees. Broadly speaking, a school district having the power to sue and be sued may employ an attorney, if the employment is necessary for the protection of the public interests committed to it. The power to employ includes the power to compensate. But the power to employ counsel exists only where a public interest is concerned which the board is charged by law with the duty to protect, and, of course, school funds cannot be used to pay costs or counsel fees in actions brought ostensibly in relation thereto but in reality for the benefit of private persons." (24 R. C. L. 597.)

The defendant's demurrer admits the facts stated in the petition; the district had sufficient interest in its territorial integrity and solidarity that it was warranted in ascertaining that if any part of its territory was to be taken away, it was lawfully done, and if unlawfully attempted, to resist. Having that power, it had the necessary incidental power to retain counsel to look after its interest.

Though not presented at length, appellant seems to contend that what should be done was a matter for a district meeting to determine. The regular annual meeting was held in April. A special meeting could be held only on ten days' notice (R. S. 1931 Supp. 72-401). There is no showing as to when the matter came up before the county superintendent or that such a meeting could have been held before the hearing. Because at the district meeting the inhabitants had power to give such direction and make such provision as deemed necessary in relation to any proceeding in which it was a party (R. S. 72-406), it does not follow that the board had no duty in the premises. R. S. 72-1004 provides that the director shall perform certain duties and "He shall appear for and in behalf of the district in all suits brought by or against the district, unless other directions shall be given by the voters of such district at a district meeting." (See *Dyer v. School District,* 76 Kan. 889, 891, 92 Pac. 1122; *School District v. School District,* 79 Kan. 407, 409, 99 Pac. 620.) While the proposed proceeding to take away a part of the territory of the district was not a "suit," we believe the statute shows impliedly that it was the director's duty to look after the district's interests in any matter affecting it, and that he and the other members of the board had the duty of protecting the interests of the district.

While not exactly in point here, see *Conklin v. School District No. 37,* 22 Kan. 521, wherein it was held that a school board was under the duty of keeping the schoolhouse in repair, notwithstanding it had already expended the amount which had been voted for that purpose at the annual meeting, and that the district was bound on its contract for additional repairs.

The district board was acting within its authority in hiring the plaintiff to represent it, and while in the briefs it is suggested that certain things were done for which the district might not be liable, the petition discloses a contract of employment on which plaintiff is entitled to recover some amount. We are not here concerned with suggested defenses which must be raised by answer.

So far as the second question is concerned, there is no allegation in the petition which warrants it. Appellant includes in its abstract the title of a cause of action said to have been instituted under the above employment, which shows the plaintiffs as individuals and to which action the school district was not a party. In his brief, appellee counters with what seems to be the court's ruling and opinion on a demurrer to the petition in the last mentioned action, and a statement of why the action was brought as it was and not otherwise, why the county attorney's name could not be used, etc. The court's opinion mentioned tends to show there was fraud in the attempt to change the district's boundaries. Just how these matters could be, or whether they were before the trial court on the demurrer to the petition which does not allege them, is not made to appear; neither does it appear why this court should rule with respect to any matter not presented to the trial court.

The order of the lower court overruling the demurrer to plaintiff's petition is affirmed.

DAWSON, J. (dissenting): Our school law contemplates that school district boundaries should be changed from time to time as educational interests and considerations of fairness to taxpayers shall suggest. A school district which may be adversely affected by such a change has no authority, either express or implied, to expend its revenues to resist such a change. If it had, the adjoining school district, which might benefit by such a change, could likewise expend its funds to promote the change. School district funds are raised to hire school teachers, not lawyers. A school district "is created to conduct and foster the education of the children of the community. It is not adequately constructed for the maintenance of litigious warfare." (*Whitlow v. Board of Education*, 108 Kan. 604, 608, 196 Pac. 772.)

There is no occasion for a school district to hire a lawyer to resist or to promote a proposed change in school-district boundaries, although, of course, patrons and taxpayers of the territory to be

affected may do so at their own expense. The statute (R. S. 72-406) which authorizes a school district to make provision for the prosecution or defense of any suit or proceedings in which the district may be a party, relates to situations where the school district is a party litigant.

These observations do not exhaust the grave objections which could be urged against the judgment in this case, but they may serve to show why I am constrained to dissent.

HUTCHISON, J., not sitting.